## In United States District Court
### For the District of Delaware

UNITED STATES OF AMERICA

v.

JERMAINE BARKSDALE,
Defendant

Criminal Complaint

CASE NUMBER: 08- 65M

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about __March 24, 2008,__ in the District of Delaware, Defendant JERMAINE BARKSDALE, after having been convicted of a felony crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate and foreign commerce :1) a firearm and 2) ammunition, both in in violation of Title __18__, United States Code, Section(s) __922(g)(1) and 924(a)(2).__

I further state that I am sworn as a __Special Deputy U.S. Marshal and am assigned to the ATF__ and that this complaint is based on the following facts:

See attached Affidavit

Continued on the attached sheet and made a part hereof:   Yes

_____
Steven Parrott
Special Deputy U.S. Marshal assigned to the ATF

Sworn to before me and subscribed in my presence,

| March 25, 2008 | at | Wilmington, DE |
|---|---|---|
| Date | | City and State |

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

FILED
MAR 2 5 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## AFFIDAVIT OF STEVEN PARROTT

1. Your affiant is Steven Parrott. Your affiant is a Special Deputy U.S. Marshal and is currently assigned as a Task Force Officer to the Wilmington, Delaware office of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives. Your affiant has been a police officer for the city of Wilmington, Delaware for ten years. Prior to your affiant's employment with the city of Wilmington, Delaware your affiant was a sworn police officer for ten years working in other states. In all your affiant has twenty years of experience as a sworn police officer. Your affiant has attended and completed training in police/law enforcement academies in the states of Florida, Wyoming and Delaware. Your affiant has received training in the recognition of firearms and the investigation of firearms offenses at all three of these academies as well as regularly attending in-service training throughout your affiant's career. Your affiant has participated in the seizures of over fifty firearms and the investigation of a substantial number of firearm related offenses. In addition your affiant has participated in discussions about the facts and circumstances of firearms offenses with other police officers, including but not limited to local, state and federal officers, specific to their own knowledge, experience and training of such offenses.

2. Unless otherwise noted, the information in this affidavit is based on your affiant's personal knowledge and conversations with officers of the Wilmington, Delaware Police Department and/or a Special Agent of the ATF who is specially trained in the investigation of firearms related incidents and the interstate nexus of firearms.

3. The seizure of all the below listed evidence took place on March 24, 2008, in the city of Wilmington, state and District of Delaware, as stated below to me by one or more Wilmington Police Officers.

4. Your affiant reviewed the criminal history information for the Defendant JERMAINE BARKSDALE from the Delaware Justice Information System and learned that the defendant has a felony conviction for which he faced incarceration for more than one year. That felony conviction was for Maintaining a Vehicle for Keeping Controlled Substances. The conviction was on or about June 30th, 2004, in the Superior Court of New Castle County, Delaware.

5. Your affiant spoke to a Wilmington Police Officer hereinafter referred to as Officer 1 and learned the following. Officer 1 was working in uniform in a marked police car when he heard another officer's radio transmission of shots being fired in the Southbridge neighborhood of Wilmington. That officer then radioed that there was a person who had been shot and was being taken to the hospital by private vehicle. That officer also radioed in a description of the vehicle.

6. Officer 1 told your affiant the following. He and another officer, hereinafter referred to as Officer 2, waited in their police car on E. 4th St. for the vehicle that was transporting the shooting victim. When they saw the vehicle approaching,

Officer 1 activated his police car's lights and siren and provided the vehicle that the victim was in an escort to the Wilmington Hospital.

7. Officer 1 told you affiant the following. The vehicle that the victim was in stopped outside the doors to the Emergency Room. It was being driven by a black female and there were two black males in the back seat. The driver and other uniformed Wilmington Police Officers went to the rear passenger side of the vehicle to assist the victim. The defendant, JERMAINE BARKSDALE, was seated in the back seat behind the driver's seat. He was somehow entwined with the victim so Officer 1 helped him out so that other officers could assist the victim.

8. Officer 1 told your affiant the following. As he was helping the defendant from the vehicle, Officer 1 asked the defendant if he had anything on him. The defendant replied that he had a gun. At that time, Officer 1 placed the defendant into handcuffs for safety purposes.

9. Officer 1 told you affiant that he observed the following. Officer 2 and another officer, hereinafter referred to as Officer 3, conducted a pat-down of the defendant. Officer 3 found a handgun in the defendant's right pant leg, resting on the top of his boot. Officer 3 removed the handgun and gave it to Officer 2.

10. Officer 1 told your affiant the following. Officer 1 asked the defendant if he had anything else on him and replied that he "had weed on him". Officer 1 knows "weed" to be street slang for marijuana. Officer 1 then searched the defendant further and found one clear sandwich bag in the defendant's left jacket pocket. In that bag were 40 small, red Ziploc style bags, each containing a green plantlike substance that appeared, based on Officer 1's training and experience, to be marijuana. In the defendant's right jacket pocket Officer 1 found 9 clear sandwich bags each containing a green plantlike substance which appeared, based on Officer 1's training and experience, to be marijuana.

11. Officer 1 told your affiant the following. Officer 1 gave the defendant his Miranda warnings and the defendant replied that he "understood that shit" and agreed to answer questions. The defendant stated that he and his brother, who was the shooting victim, had gone to a store in a vehicle that his brother was driving. His brother went into the store while the defendant waited in the vehicle. After a few minutes the defendant started to go into the store when his brother came back out. His brother engaged in a conversation with a subject unknown to the defendant so the defendant started back for the vehicle. The defendant heard gunshots and turned to see that his brother was on the ground and the subject his brother had been talking to was running away. The defendant said that he went back to the vehicle he had come in and retrieved the two bags of "weed" from under the front passenger seat. He then went back to his brother and found a handgun on the ground near him. The defendant picked up the handgun and began pursuing the subject his brother had been talking to. As he pursued the subject, the subject turned and shot at the

defendant twice. At that time the defendant stopped and went back to where his brother was. He found that his brother was being put into a vehicle and the defendant got into the vehicle and rode to the hospital.

12. Your affiant also spoke with Officer 2. He stated that after taking the recovered firearm from Officer 3, Officer 2 kept it in his possession until eventually turning it over to the Evidence Detection Unit. He described the firearm as a Glock .45 caliber handgun. He said that there was a magazine in the firearm which was loaded with five (5) .45 caliber bullets. The weapon had been damaged and the slide could not be operated at that time. Your affiant spoke with an ATF agent expertly trained in the interstate nexus of firearms about the seized firearm. The agent stated that the seized firearm would have had to cross state lines prior to its possession in Delaware, thereby affecting foreign and/or interstate commerce.

13. Your affiant spoke with an Evidence Detection officer, hereinafter referred to as Officer 4. Officer 4 told your affiant that two rounds of ammunition recovered from the seized firearm were manufactured by Remington and the other four were manufactured by Winchester. Your affiant spoke with an ATF agent expertly trained in the interstate nexus of ammunition. That agent stated to your affiant that the ammunition was manufactured in a state other than Delaware, meaning that it had to travel across state lines prior to its possession in Delaware, thereby affecting foreign and/or interstate commerce.

14. Your affiant responded to the Wilmington Police Department's Evidence Detection Unit, where the seized firearm was being kept. Your affiant observed it to be a Glock model 36, .45 caliber handgun. It did not appear to be operable in its current condition. Your affiant spoke with an ATF agent expertly trained in the identification of firearms and in both the opinion of the agent and your affiant, the seized firearm contained both the frame and receiver of a firearm, thereby making it a firearm under the federal definition of a firearm.

Wherefore, based upon your affiant's training and experience, your affiant believes that there is probable cause to believe that the defendant did: possess in and affecting interstate and/or foreign commerce, a firearm and ammunition after having been convicted of a felony crime punishable by imprisonment for a term exceeding one year in violation of Title 18 U.S.C., Section(s) 922(g)(1) and (924)(a)(2).

Steven P. Parrott
Task Force Officer, ATF
Special Deputy U.S. Marshal

Sworn to and subscribed in my presence
this 25 day of March, 2008.

The Honorable Mary Pat Thynge
United States Magistrate Judge